Filed 9/20/23  P. v. Branch CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

|  |  |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>DAQUAN RASHAD BRANCH,<br><br>Defendant and Appellant. | D080784<br><br><br><br>(Super. Ct. No. RIF1201399) |

APPEAL from an order of the Superior Court of Riverside, Matthew C. Perantoni, Judge.  Affirmed.

Robert E. Boyce, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winter, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Alan A. Amann and Robin Urbanski, Deputy Attorneys General, for Plaintiff and Respondent.

Daquan Rashad Branch appeals from an order summarily denying his petition for relief from a 2013 attempted murder conviction under former

Penal Code section 1170.95 (now § 1172.6).[1] We conclude that Branch is legally ineligible for relief because he was not convicted of "attempted murder under the natural and probable consequences doctrine." (§ 1172.6, subd. (a).) We also reject Branch's argument that he is entitled to relief based on his theory that he could have been convicted of attempted murder under some other theory of imputed malice. Accordingly, we affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Underlying Facts*

Like the parties, we summarize the facts from the underlying trial as stated in our unpublished 2015 decision affirming Branch's conviction for attempted murder (*People v. Branch* (May 8, 2015, D067450 [nonpub. opn.], review den. Sept. 9, 2015, S227006 (*Branch*)). (See *People v. Lopez* (2022) 78 Cal.App.5th 1, 13 ["The record of conviction may include the underlying facts as presented in an appellate opinion"].) We provide only an abbreviated version of the facts relevant to Branch's section 1172.6 petition.

Branch was an active member of a Moreno Valley criminal street gang known as Sex Cash, Web Block. On February 9, 2012, two of Branch's fellow gang members, Caleb Marquan Henderson and Jeremy Walker, confronted Jason G. as he was walking with friends in an El Dorado apartment complex. They asked Jason for his gang affiliation. Jason replied that he was a member of the Rolling 90's, a Los Angeles gang. Henderson told Jason's

---

[1] All statutory references are to the Penal Code unless otherwise specified. Effective June 30, 2022, section 1170.95 was recodified without substantive change in section 1172.6, pursuant to Assembly Bill No. 200 (2021-2022 Reg. Sess.) (Assembly Bill No. 200). (See Stats. 2022, ch. 58, § 10.) We refer to the current codification throughout this opinion, unless otherwise indicated.

2

group that they were in "Sex Cash territory, Web Block." (*Branch*, *supra*, D067450.)

Later that day, Jason met his friend Kendrick P., who was associated with the Harlem 30's, another Los Angeles gang. Kendrick was familiar with Branch, Henderson, and Walker, and had played video games with them earlier that afternoon at the same El Dorado complex in Lareka Davis's apartment. Henderson stayed at the apartment as well, and Branch and Walker came by sometimes. (*Branch*, *supra*, D067450.)

Jason and Kendrick were walking through the El Dorado complex when they saw Davis talking on her cell phone near her apartment. Davis made a gesture towards them as they passed. Soon afterwards, Jason noticed that they were being followed by Branch, Henderson, and Walker. Henderson yelled out "Web" or "Web Block" at least once, and Walker fired shots at Jason and Kendrick. Jason was struck once in the back, fracturing two ribs and puncturing a lung. Jason ran to a nearby apartment, where the occupant called the police. Kendrick fled to another apartment complex. (*Branch*, *supra*, D067450.)

The Riverside County Sheriff's Department responded to the scene. They found five spent .380-caliber shell casings and a live .380-caliber bullet. After further investigation, they obtained and executed a search warrant at Davis's apartment. Davis, Branch, and Henderson were inside. Branch attempted to escape over the balcony. In the apartment, sheriff's deputies found papers referring to Web Block and a loaded .380 caliber handgun hidden in a bucket. (*Branch*, *supra*, D067450.)

After her arrest, Davis told investigators that she was at her apartment on the night of the shooting. She heard five loud booming sounds. A few minutes later, Branch and Henderson came back to the apartment

3

sweating profusely. Davis was aware that Branch, Henderson, and Walker were members of Sex Cash and had overheard them say "Web Block" in the past. (*Branch*, *supra*, D067450.)

A gang expert testified that the shooting was committed to benefit the Sex Cash criminal street gang. (*Branch*, *supra*, D067450.)

B. *Criminal Proceedings*

In a joint trial with two juries (one for Branch and Henderson and the other for Walker), one of the juries convicted Branch and Henderson of two counts each of attempted murder (§§ 187, subd. (a), 664) and one count each of active participation in a criminal street gang (§ 186.22, subd. (a)). The jury also found true allegations that a principal personally discharged a firearm resulting in great bodily injury (§ 12022.53, subds. (d), (e)(1)), and that the crimes were committed in association with or for the benefit of a criminal street gang (§ 186.22, subd. (b)). As to Branch and Henderson, the jury also found that the attempted murders were not premeditated and deliberate.[2]

The jury instructions given to Branch's jury included CALCRIM No. 401 on direct aiding and abetting liability and CALCRIM No. 600 on attempted murder. The court gave *no* jury instruction on the natural and probable consequence doctrine (CALCRIM No. 402) or felony murder (CALCRIM Nos. 540A-540C). The attempted murder instruction (CALCRIM No. 600) explicitly stated that the perpetrator must have "intended to kill"

---

[2] The other jury convicted Walker of two counts of attempted, premeditated and deliberate murder and being an active participant in a criminal street gang. The Walker jury also found that he personally and intentionally discharged a firearm resulting in great bodily injury and committed the crimes in association with or for the benefit of a criminal street gang. We later reversed the judgment against Walker. (*Branch*, *supra*, D067450.)

4

the victim. The direct aiding and abetting instruction (CALCRIM No. 401) stated in relevant part:

> "To prove that the defendant is guilty of a crime based on aiding and abetting that crime, the People must prove that:
>
> "1. The perpetrator committed the crime;
>
> "2. The defendant knew that the perpetrator intended to commit the crime;
>
> "3. Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime; [¶] AND [¶]
>
> "4. The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime.
>
> "Someone aids and abets a crime if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime."

The trial court sentenced Branch to an indeterminate term of 50 years to life plus a determinate term of nine years four months. We affirmed the judgment on appeal. (*Branch*, *supra*, D067450.)

C. *Petition for Resentencing*

In June 2022, Branch filed a petition for resentencing under section 1172.6. After appointing counsel to represent Branch, the court conducted a hearing in July 2022. The prosecutor informed the court that Branch had been convicted of attempted murder; that the jury had *not* been instructed on the natural and probable consequences doctrine or felony murder; and that he had provided defense counsel with the appellate opinion and jury instructions. Defense counsel responded, "I've confirmed everything counsel said and I'll submit." Based on these statements, the trial court denied the petition.

5

DISCUSSION

Branch contends that the trial court erred by denying his section 1172.6 petition for relief without an evidentiary hearing. He asserts that he was eligible for relief because one of the jury instructions given at his trial (CALCRIM No. 401) and the prosecutor's closing argument permitted the jury to convict him of aiding and abetting the attempted murder without any finding that he personally harbored a specific intent to kill. We review Branch's eligibility for relief de novo. (*People v. Harrison* (2021) 73 Cal.App.5th 429, 437.)

Section 1172.6 allows those previously convicted of felony murder, or murder or attempted murder under the natural and probable consequences doctrine, or murder based on any other theory of imputed malice, to petition the court to have their convictions vacated and be resentenced on any remaining counts, if they could not presently be convicted of murder or attempted murder because of changes to the law made effective in January 2019. (§ 1172.6, subd. (a).) After appointment of counsel, the trial court is permitted to examine the record of conviction to assess whether it refutes the petitioner's claim of eligibility. (*People v. Lewis* (2021) 11 Cal.5th 952, 970–972.) The court may deny the petition at the prima facie stage if the record of conviction discloses that the petitioner is ineligible for relief as a matter of law. (*Id.* at p. 971.)

Here, the record establishes that Branch is ineligible for relief as a matter of law. Branch was convicted of *attempted* murder, not murder. The only theory of attempted murder specified by section 1172.6 is "attempted murder under the natural and probable consequences doctrine." (§ 1172.6, subd. (a); see *People v. Coley* (2022) 77 Cal.App.5th 539, 548 (*Coley*) [the statute "applies by its terms only to attempted murders based on the natural

6

and probable consequences doctrine"].)  But Branch's jury was not instructed on any such theory.  The court instructed the jury with CALCRIM Nos. 400 and 401 on direct aiding and abetting liability—but did not give CALCRIM Nos. 402 or 403 or any other instruction on the natural and probable consequences doctrine.  Thus, Branch was not convicted of attempted murder on any theory specified by section 1172.6.[3]  (See, e.g., *People v. Estrada* (2022) 77 Cal.App.5th 941, 946 (*Estrada*) [summary denial of section 1172.6 petition affirmed where record demonstrated trial court did not instruct jury on natural and probable consequences doctrine]; *People v. Offley* (2020) 48 Cal.App.5th 588, 599 ["if the jury did not receive an instruction on the natural and probable consequences doctrine, the jury could not have convicted the defendant on that basis, and the petition should be summarily denied"].)

Section 1172.6 does *not* apply to an attempted murder conviction based on direct aiding and abetting liability.  "A theory of direct aiding and abetting remains a valid theory [under current law]."  (*Coley, supra*, 77 Cal.App.5th at p. 546 [defendant convicted of murder and attempted murder on direct aiding and abetting theory not eligible for section 1172.6 relief because jury was not instructed on natural and probable consequences doctrine], citing *People v. Gentile* (2020) 10 Cal.5th 830, 848; see also *People v. Reyes* (2023) 14 Cal.5th 981, 990 ["Case law has recognized and applied this theory, and we see no

_____

[3]  We need not and do not decide whether, notwithstanding the plain language of the statute, it applies to petitioners who were convicted of *attempted* murder and could have been found guilty on a theory of imputed malice based solely on their participation in the crime.  Even if the statute applied to such petitioners, we would still conclude that Branch could not have been convicted on such a theory of imputed malice for reasons we explain below.

7

basis to abrogate it."].)  Thus, Branch is legally ineligible for relief under section 1172.6.

Branch acknowledges that the court did not instruct on the natural and probable consequences doctrine.  Citing *People v. Langi* (2022) 73 Cal.App.5th 972 (*Langi*), however, he contends that the jury could have convicted him of attempted murder as an aider and abettor on an imputed malice theory.  In *Langi*, the defendant was convicted of second-degree murder as an aider and abettor after participating with three other men in beating a man who died from head trauma after falling and hitting his head.  (*Id.* at pp. 975, 976–977.)  The court did not instruct the jury on the natural and probable consequences doctrine, but did instruct on aiding and abetting (CALJIC No. 3.01) and second degree murder (CALJIC No. 8.31).  (*Id.* at pp. 975, 980–981.)

On appeal from the summary denial of Langi's section 1172.6 petition, the court determined that the combined effect of the aiding and abetting instruction (CALJIC No. 3.01) and the second-degree murder instruction (CALJIC No. 8.31) created an ambiguity, which could have allowed the jury to "find the defendant guilty of aiding and abetting second degree murder without finding that he personally acted with malice." (*Langi*, *supra*, 73 Cal.App.5th at p. 982.)  Specifically, the court observed that while the aiding and abetting instruction stated that a person aids and abets a crime if he acts with knowledge of the perpetrator's unlawful purpose and with the intent to commit or encourage that crime, "the second-degree murder instruction specified that the direct perpetrator of that crime need not act with the unlawful intent of causing death." (*Ibid.*)  Thus, the court concluded that Langi could have been convicted of aiding and abetting second-degree murder

even if he only intended to encourage the perpetrator's intentional act of punching the victim.  (*Id*. at pp. 982–983.)

*Langi* is inapposite here.  In contrast to *Langi*, Branch was convicted of aiding and abetting an *attempted* murder, not second degree or implied malice murder.  The court in Branch's trial explicitly instructed the jury that the perpetrator of the attempted murder *must* have "intended to kill" the victim.  The court did not give any jury instruction on implied malice.  For this reason, *Langi* is not on point.  (See *Coley*, *supra*, 77 Cal.App.5th at pp. 546–547 [*Langi* inapplicable to defendant convicted of attempted murder because *Langi* "involve[d] *implied* malice" murder whereas attempted murder requires "express rather than implied malice"].)

The instructions given to Branch's jury on direct aiding and abetting liability (CALCRIM Nos. 400 and 401) also required the jury to find that Branch shared the perpetrator's intent to kill.  These instructions informed the jury that to convict Branch of attempted murder as an aider and abettor of that crime, the prosecution had to prove that Branch knew the perpetrator intended to commit the crime, that he intended to aid and abet the perpetrator in committing the crime, and that he did aid and abet the perpetrator in attempting the crime.  Based on these instructions, there is "no reasonable likelihood" jurors would have believed that they could convict Branch of attempted murder based on a theory of *imputed* malice.  (See *People v. Johnson* (2016) 62 Cal.4th 600, 640–641 [where trial court gave CALCRIM Nos. 400 and 401, "there was no reasonable likelihood" the jurors would have understood the instructions "to allow them to base defendant's liability for first degree murder on the mental state of the actual shooter, rather than on defendant's own mental state in aiding and abetting the killing."].)  These instructions correctly conveyed the principle that an aider

9

and abettor's "mental state is her own; she is liable for her mens rea, not the other person's."[4] (*People v. McCoy* (2001) 25 Cal.4th 1111, 1118; see also *Estrada, supra*, 77 Cal.App.5th at pp. 947–948 [no reasonable likelihood direct aider and abettor was convicted of murder based on theory of imputed malice "because the jury was instructed on CALCRIM No. 401"].)

Branch nevertheless contends that CALCRIM No. 401 allowed the jury to convict him of attempted murder for aiding and abetting the perpetrator's commission of a crime other than attempted murder (such as the charged crime of active participation in a criminal street gang) without harboring any intent to kill. We conclude, however, that "no reasonable juror would have interpreted [CALCRIM No. 401] in the manner now argued by [Branch]." (*People v. Hardy* (1992) 2 Cal.4th 86, 151.) CALCRIM No. 401 stated that to prove Branch was guilty of "a crime" based on aiding and abetting "that crime," the People had to prove that (1) the perpetrator committed "the crime," (2) Branch knew the perpetrator intended to commit "the crime," and (3) Branch intended to aid and abet the perpetrator in committing "the crime." The next sentence further emphasized that "[s]omeone aids and abets *a crime*" if he "specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission *of that crime*." (Italics added.)

As applied to the attempted murder charge, we believe any reasonable juror would have understood this to mean that Branch could not be convicted

_____

4      The trial court did not instruct the jury with the last bracketed sentence of CALCRIM No. 400, which states: "[Under some specific circumstances, if the evidence establishes aiding and abetting of one crime, a person may also be found guilty of other crimes that occurred during the commission of the first crime.]" As explained in the Bench Notes, this sentence should only be given if the prosecution is relying on the natural and probable consequences doctrine. (Bench Notes to CALCRIM No. 400.)

as an aider and abettor *of attempted murder* unless he knowingly aided and abetted the perpetrator's commission *of attempted murder*. "We credit jurors with intelligence and common sense . . . and do not assume these virtues will abandon them when presented with the court's instructions." (*People v. Coddington* (2000) 23 Cal.4th 529, 594.)

Nor did the prosecutor argue a contrary theory at trial, as Branch suggests. In explaining the concept of aiding and abetting to the jury, the prosecutor argued: "It means these two individuals knowing of Mr. Walker's unlawful purpose, they specifically intended to aid, facilitate, promote, encourage, or instigate the commission of the crimes. Pick one. Did they do any of those with their conduct?" Branch claims that the prosecutor was telling the jury Branch and Henderson were guilty of attempted murder if they aided and abetted Walker in *any* crime, and that the jury should just "pick one." In context, however, the prosecutor's use of the phrase "pick one" clearly referred to the alternate types of aiding and abetting conduct he had just listed for the jury: aiding, facilitating, promoting, encouraging, or instigating. The prosecutor never suggested that Branch could be liable for attempted murder even if he only intended to aid Walker in the commission of some other crime. And even if the prosecutor had so misstated the law, this would be a "trial error" not within the scope of section 1172.6. (*People v. DeHuff* (2021) 63 Cal.App.5th 428, 438.)

Finally, Branch "fails to meet the criterion of section 1172.6, subdivision (a)(3) that a petitioner may seek relief only if '[t]he petitioner could not presently be convicted of murder or attempted murder because of *changes* to Section 188 or 189 made effective January 1, 2019.' " (*People v. Antonelli* (2023) 93 Cal.App.5th 712, 721.) The amendments to sections 188 and 189 made effective January 1, 2019 did not make any change in the law

11

regarding direct aiding and abetting liability for attempted murder. And both before and after these amendments, the law prohibited a conviction under this theory based on imputed malice.

We conclude that Branch is ineligible for relief because he was not convicted of attempted murder "under the natural and probable consequences doctrine" (§ 1172.6, subd. (a)) or any other theory of imputed malice covered by the statute.

## DISPOSITION

The order denying Branch's petition for relief under section 1172.6 is affirmed.

BUCHANAN, J.

WE CONCUR:

IRION, Acting P.J.

CASTILLO, J.

12